IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES : | |
| : | |
| v. : | Criminal No.: 07-60-01 (JR) |
| : | |
| VINSON GALES : | |

DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

Defendant Vinson Gales, by and through undersigned counsel, submits the following memorandum in aid of sentencing:

Mr. Gales is Safety Valve Eligible

The Court should apply the safety valve in determining an appropriate sentence for Mr. Gales. The presentence report finds Mr. Gales safety valve eligible (*see* paras 20; 61 & 62). The record supports this conclusion.

On February 15, 2007, police with a warrant for the arrest of Perry Kendu on the charge of assault with intent to kill, went to 5101 Call Place, SE, apartment #1, because they had reason to believe that Mr. Kendu was hiding in the apartment. Mr. Vinson's and his co-defendant and then-girlfriend, Da'Reese McCullough, were alone in the apartment when police arrived. When she heard police at the door, Ms. McCullough retrieved the gun from where she had allowed Mr. Kendu to hide it in the living room, and hid the gun in the bag of the vacuum cleaner in the bedroom she shared with Mr. Gales. Ms. McCullough then let police in and confirmed that she knew Mr. Kendu and had seen him around.

Police searched the apartment after finding a small amount of drugs in plain view in the living room. During the search, they separated Ms. McCullough and Mr. Gales. After searching for some time, officers asked Mr. Gales where the drugs were, and after initially denying that there

1

were additional drugs were in the apartment, Mr. Gales finally confessed that additional drugs could be found in the bedroom closet, and pointed out to police where they were. On February 15, 2007, Ms. McCullough was arrested and charged with the drugs and gun. Mr. Gales was neither arrested nor charged until September 21, 2007.

When questioned by police about the gun found in the apartment at a time when she alone was charged with both the drugs and the gun, Ms. McCullough claimed that she had seen the gun in the apartment "a few weeks before" February 15, 2007, and had asked Mr. Gales about it; that Mr. Gales had said that it was his, and that she then hid the gun in the vacuum cleaner because she didn't want it around.

Importantly, even this version – though it differs from Mr. Gales' version – does not establish that Mr. Gales possessed the gun in connection with drug trafficking, so as to render Mr. Gales ineligible for application of the safety valve. *See, e.g., United States v. Nelson,* 222 F.3d 545 (9th Cir. 2000)(remanded for court to consider whether defendant who claimed not to have possessed weapons in connection with PWID offense, was safety valve eligible); *compare, e.g., United States v. Anderson,* 452 F.3d 87 (1st Cir. 2006)(even application of gun bump for possession of firearm does not preclude safety valve application where defendant possessed firearm for protection after series of home invasions, but did not possess firearm in connection with the PWID offense); *United States v. Savalza-Rodriguez,* 379 F.3d 1182 (10th Cir. 2004)(same where defendant only constructively possessed firearm and no evidence that he possessed firearm in connection with the PWID offense); *compare United States v. Plunkett,* 125 F.3d 873 (D.C. Cir. 1997)(not plain error for this Court to conclude that defendant who admitted to possessing gun and crack in his apartment, was not eligible for safety valve, where gun was present with drugs; defendant received gun bump and there was no

evidence that connection between gun possession and PWID was "clearly improbable" under §2D1.1).

Moreover, there are many reasons to discredit Ms. McCullough's account that the gun belonged to Mr. Gales.

First, Ms. McCullough's account does not make sense. Ms. McCullough claims that she allowed Mr. Gales to bring powder cocaine into the apartment that they shared, and knew that Mr. Gales used the apartment to cook the powder into crack cocaine. It is not disputed that Mr. Gales then sold the crack cocaine to others. If Ms. McCullough saw a gun in the apartment around the time that these activities were ongoing and we are to believe that Mr. Gales confirmed to her that the gun was his, there is no plausible explanation for why she would hide Mr. Gales' gun in the vacuum cleaner. What if someone tried to rob Mr. Gales, who is wheelchair bound? Are we to believe that Ms. McCullough condoned the drug distribution but would have begrudged her boyfriend the ability to defend himself and the profits from that activity which she, too, surely enjoyed?

The truth makes a lot more sense. It was not until Ms. McCullough heard police at the door, that she retrieved the gun and put it in the vacuum cleaner bag. Once the Court accepts that Ms. McCullough was not honest about when and why she hid the gun, then the Court must look with scepticism at the remainder of Ms. McCullough's story; specifically that Mr. Gales admitted to her the gun was his. He did not.

Moreover, when she told police that Mr. Gales confessed to the gun and that she hid it because she did not want it around, Ms. McCullough was motivated to come up with a story that decreased her own exposure. It is one thing to aid and abet the distribution of crack cocaine, and

another thing entirely to implicate oneself in hiding a weapon for a person wanted for assault with intent to kill.

Mr. Vinson qualifies for safety valve relief. See U.S.S.G. § 5C1.2(a)(1-5). Subsection 5 imposes the requirement that:

> not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

On March 21, 2008, Mr. Gales satisfied this requirement during a lengthy meeting conducted at the U.S. Attorney's Office.[1]

The Court Should Sentence Mr. Gales Below his 46-57 Month Guideline Range

When Mr. Gales was 15 years old, his older brother, Vernon, who was then 24 years old, was killed. Mr. Gales lost interest in the things he had up to that point enjoyed: football, basketball, and baseball, and began using marijuana, ecstasy, and prescription drugs such as Percocet and Zantax. Mr. Gales never received drug treatment and clearly could benefit from it.

Mr. Gales worked at the Hecht's Warehouse after dropping out of school. Then, when we was 19 years old, Mr. Gales was shot while Christmas shopping at the Bowie Town Center. Mr.

---

[1] Counsel would be happy to more fully address the satisfaction of this requirement at sentencing. To the extent that the government may oppose safety valve application based on §5C1.2(a)(5), counsel wishes to draw attention to the case of *Tyra v. United States,* 2008 WL 656259, *3, p.4 (7th Cir. March 12, 2008)(appropriate to grant safety valve relief where defendant provided information concerning his drug dealing contacts from the single year that the parties had agreed constituted relevant conduct, over government objection that defendant had not satisfied §5C1.2(a)(5)'s requirement since defendant had dealt drugs for 10 years but did not provide information concerning his contacts in years 2-10).

Gales' friend got into an argument with a man who then shot at Mr. Gales' friend, but hit Mr. Gales instead - rendering him paralyzed from the waist down.

As a result of this injury, Mr. Gales must depend on others for transportation; assistance in bathing, and getting into and out of bed. Sometimes the van that can accommodate Mr. Vinson's wheelchair is not available and his father, who routinely brings Mr. Vinson to see undersigned counsel, must carry Mr. Gales over his shoulder from the car into the building and from the waiting room to a chair in the meeting room. Mr. Gales' embarrassment and sense of emasculation at this necessity is evident to any observer.

At least, however, his father is able and willing to assist Mr. Gales in this way. As humiliating as it is to Mr. Gales, counsel has often wondered how or if Mr. Gales' handicap will be accommodated in prison, and what additional hardships his weakness will visit upon Mr. Gales in a prison environment. There is no question that incarceration will be harder on Mr. Gales than on an able bodied man. The Court should take into account the additional hardships that incarceration will work on a man with Mr. Vinson's disabilities, and sentence Mr. Vinson below his guidelines range for that reason. *Compare, e.g., United States v. Smith,* 27 F.3d 649, 651 (D.C. Cir. 1994)(downward reduction appropriate where status as a deportable alien renders incarceration a greater hardship).

Moreover, Mr. Vinson's paralysis has led to medical complications which routinely require hospitalization. For instance, about twice a month, Mr. Gales will contract urinary tract infections which require hospitalization to treat. Given the deplorable conditions at D.C. jail, incarceration at that facility would therefore threaten Mr. Gales life. Counsel hopes that there is a federal

designation capable of handling Mr. Gales' medical needs so that the Court's sentence is not commuted to a death sentence.

WHEREFORE, for the foregoing reasons and additional reasons to be advanced at sentencing, Mr. Gales asks that the Court adopt the presentence report finding that he is safety valve eligible, and sentence Mr. Gales to 36 months incarceration.

Respectfully submitted,

_____/s/_____
Nikki Lotze
Roberts & Wood
6801 Kenilworth Ave.
Suite 202
Riverdale, MD 20737

(301) 699-0764

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Defendant's Sentencing Memorandum, has been delivered via email and by mail, this 26 day of March, 2008, to:
AUSA Lou Ramos; Office of the States Attorney; 555 Fourth Street, NW; Washington, D.C. 20530

_____/s/_____
Nikki Lotze